BLAIR et al. v. UNITED STATES for Use and Benefit of GREGORY–HOGAN et al.

UNITED STATES for Use and Benefit of GREGORY–HOGAN et al. v. BLAIR et al.

Nos. 12871, 12875.

Circuit Court of Appeals, Eighth Circuit.

July 24, 1945.

For former opinion, see 147 F.2d 840.

J. W. Barron, of Little Rock, Ark. (Ernest P. Rogers, of Atlanta, Ga., on the brief), for appellants and cross-appellees.

Henry Donham, of Little Rock, Ark. (Martin K. Fulk and Pat Mehaffy, both of Little Rock, Ark., on the brief), for appellees and cross-appellants.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

On the first hearing of this case we approved the finding by the trial court of a breach by defendant Blair of his asphalt contract with the plaintiff Gregory-Hogan alleged in paragraph 11 of the complaint. A judgment for damages in favor of Gregory-Hogan resulting from this breach of contract was affirmed after reduction in the amount allowed by the trial court. We reversed the judgment of the lower court in favor of Gregory-Hogan on its claim allowed by the trial court under paragraph 6 of the complaint, in which it alleged liability on the part of defendant Blair for additional expenses incurred by Gregory-Hogan under the so-called speed-up agreement between the parties. The contracts referred to are set out with sufficient particularity in our original opinion (8 Cir., 147 F.2d 840) and need not be restated here. In petitions for rehearing both parties assert error in respect to the matters stated.

Defendant Blair contends that, conceding that the evidence was sufficient to establish the breach by him of the asphalt contract, it nevertheless conclusively establishes the fact that the plaintiff Gregory-Hogan sustained no damage as the result of the breach.

The substance of paragraph 11 of the complaint is that the plaintiff was obligated under its asphalt contract to produce approximately 50,000 tons of asphalt for paving within the time specified in the contract; that, in order to comply with this requirement of the contract, it was necessary for plaintiff to rent and ship to the place of performance an asphalt plant capable of producing 500 tons of asphalt a day; that after the execution of the contract and after plaintiff had incurred the expense of installing the asphalt plant capable of doing the work, the defendant, without notice to or the consent of the plaintiff, caused the required amount of asphalt to be reduced from approximately 50,000 tons to approximately 20,000 tons, with

the result that the plaintiff did not need and could not economically use the large equipment and installation which the original contract required. As damages for this breach of contract plaintiff sought to recover expenses incurred in shipping the large asphalt plant to the place of performance of the work, in installing and equipping the plant for the production of 50,000 tons of asphalt and in dismantling and returning the plant to the point from which it was shipped. Plaintiff offered evidence tending to show that it owned a smaller plant fully capable of furnishing the reduced quantity of asphalt within 150 days. The smaller plant was located at Fort Smith, Arkansas, very near the place of performance of the contract, whereas the larger plant was brought from Mississippi. Included in plaintiff's alleged out-of-pocket expense was the rental value of the larger plant, presumably for the time it was not needed. In support of this item of expense, plaintiff offered proof to show the fair rental value of the plant and that it could have been rented to other contractors, if the asphalt contract, as originally executed, had not required its use in its performance.

■ The majority of the court were of the opinion that the charges for rent, included in the plaintiff's alleged out-of-pocket expense, could not be allowed under the evidence in this case. We allowed a recovery in favor of the plaintiff on this claim in the sum of $16,981.74, representing plaintiff's out-of-pocket expense in shipping, installing, and dismantling an asphalt plant larger than was necessary for the performance of its contract. On reconsideration, we conclude that this recovery is not supported by any evidence in the record.

The so-called asphalt contract was executed on September 20, 1941. Within a very few days after the execution of the contract plaintiff learned that the Government had decided to reduce the amount of asphalt required under the contract by approximately the number of tons of reduction alleged in the complaint. This information came to the plaintiff before September 25, 1941, because on that date plaintiff advised the defendant of its receipt; and, on the contention that the reduction in the amount of asphalt contemplated under the contract would increase the unit cost in the performance of the contract, requested the defendant to ask the Govern-

ment for an increase in the unit prices allowed on the work. On September 30, 1941, defendant Blair replied to plaintiff's letter of September 25, 1941, confirming plaintiff's information concerning the reduction in the amount of asphalt required under the contract and promising to submit to the proper officials of the Government plaintiff's request for increased unit prices. Defendant's letter of September 30, 1941, was acknowledged on October 22, 1941. Plaintiff signified its intention of proceeding with the performance of the contract as changed, and expressed confidence that defendant would adequately present to the Government plaintiff's request for an increase in unit prices for the work under the contract.

There is nothing in the record to show when plaintiff began shipment of the large asphalt plant to the place of performance of the contract. In view of the fact that the plaintiff's evidence establishes that it received knowledge of the reduction in the amount of asphalt required under the contract almost contemporaneously with its execution, it is hardly reasonable to suppose that the large asphalt plant had been dismantled at its location in Mississippi and shipped to a point near Fort Smith, Arkansas, where the work was to be done, and there assembled, before plaintiff had notice of the fact, if its testimony is to be accepted, that a plant of such capacity would not be required for the work to be done by it.

■ On January 12, 1942, defendant wrote to plaintiff, saying that he had received from the Government a change order providing for the changes in the original contract which resulted in the reduction of the asphalt required. In this letter defendant stated:

"You were advised sometime ago that the asphalt surfacing in the Motor Park Areas would be omitted, and this Change Order makes the omission a definite fact.

"This information is given to you so that you can plan your equipment arrangements accordingly."

In view of the preceding correspondence between the parties, plaintiff's testimony that the letter of January 12, 1942, was the first decisive information that there would be a change in the requirements concerning the amount of asphalt needed in performing the contract, and that up to January 12, 1942, it had to hold itself in readiness to produce 50,000 tons of asphalt,

does not seem entirely reasonable. But even so, accepting January 12, 1942, as the date of the breach of the asphalt contract, plaintiff's own evidence shows that it was advised as early as November 4, 1941, that no asphalt work would be done before March 1, 1942. The contract, as originally written, required the work to be finished by March 25, 1942, but the date for completion was later extended to April 12, 1942. Plaintiff did not begin setting up its large asphalt plant until some time in the middle of February, 1942, after the receipt of decisive information, if its testimony is to be accepted, that the plant would not be required. The asphalt work was begun about March 1, 1942, but, although it is admitted that nothing occurred to delay the work, it was not completed until June 3, 1942. The large asphalt plant which plaintiff now claims was not needed in the performance of work which the contract required to begin on March 1, 1942, and to be completed on April 12, 1942, was actually needed and used from March 1, 1942, until June 3, 1942. The testimony of Mr. Hogan, of the Gregory-Hogan organization, shows that plaintiff could not have completed its asphalt work with the smaller Fort Smith plant within less than five months and that from three to four months were required with the larger plant. The contract allowed less than two months for the asphalt work. In view of this evidence, plaintiff's claim that, because of the reduction in the amount of asphalt required in its original contract, it incurred expense in furnishing a plant larger than the work actually done required is not sustained.

The fundamental basis for an award of damages for breach of contract is just compensation for losses necessarily flowing from the breach. Michelson, Inc., v. Nebraska Tire & Rubber Co., 8 Cir., 63 F.2d 597, 601; 5 Williston on Contracts, Rev. Ed., § 1338; Restatement of the Law of Contracts, § 329. And while the breach of contract gives rise to a right of action, it is nevertheless possible for a breach to occur without causing damage. Restatement of the Law of Contracts, § 328a. As pointed out in the original opinion, a party whose contract has been breached is not entitled to be placed in a better position because of the breach than he would have been in had the contract been performed. Plaintiff in this case did not seek recovery of profits which it may have made had the contract been performed as originally written. It seeks only the recovery of out-of-pockets expense claimed to have been caused by the breach. The evidence fails completely to establish the loss which plaintiff has asserted. Accordingly, the original opinion in this case is modified by limiting the recovery under paragraph 11 of the complaint to $1 as nominal damages.

In its petition for rehearing plaintiff asserts that this court erred in denying the plaintiff the right to recover the sum of $9,709.94, representing the expense incurred by plaintiff in providing an additional gravel pit, the recovery of which was allowed by the District Court as an expense necessarily incurred by the plaintiff under the supplemental contract known as the speed-up agreement. We denied recovery of this item on the ground that under the so-called speed-up agreement the defendant became obligated to pay the plaintiff for such items of expense as the plaintiff incurred as the result of the speed-up only as and when plaintiff's claims therefor were allowed by the Government and paid to defendant. The record shows that while defendant Blair presented to the Government plaintiff's claim for the cost of opening the gravel pit and is still pressing the claim, the Government had declined to allow or pay it. In its petition for rehearing plaintiff now asserts that defendant became obligated for this expense under a separate written contract between plaintiff and defendant, and that defendant was obligated to pay this expense whether or not approved and paid by the Government. The claim of a separate written contract is based upon a letter written by defendant Blair to plaintiff Gregory-Hogan, under date of July 28, 1942. In this letter defendant stated: "I am enclosing herewith original and yellow copy of my Formal Order increasing your contract price in the sum of $9,709.94, said amount being that allowed your firm to cover additional gravel pit."

The enclosed formal order provides: "This formal order hereby increases your contract price relative above project in the sum of $9,709.94."

The evidence discloses, however, that the letter and formal order mentioned were written by defendant on the faith of a preliminary allowance by the Government of the claim for the expense of providing the gravel pit, and that subsequently the Government reversed its position and declined to pay the claim. We think it clear that the letter relied on falls far short, in

view of the undisputed evidence concerning it, of establishing an absolute agreement on the part of defendant to pay for the cost of opening the gravel pit. Plaintiff's petition for rehearing on this point is accordingly denied.

Plaintiff further alleges that we overlooked in our original opinion an item of interest in the sum of $2,787.54, representing the amount of interest accrued at six per cent per annum on the sum of $34,843.96, which, as noted in the original opinion, the defendant had paid on the judgment entered by the District Court in favor of the plaintiff. Defendant concedes the correctness of this claim on the part of plaintiff, and, accordingly, it is allowed.

It follows from what we have said that the judgment appealed from must be modified so as to permit a recovery by the plaintiff of three items, $10,360.76, $2,570.75, and $2,787.54, plus $1 as nominal damages for breach of the asphalt contract, amounting in the aggregate to $15,720.05, with interest upon the first two items at six per cent per annum from September 3, 1942. This cause is remanded to the lower court with directions to modify the judgment accordingly. Neither of the parties shall recover costs on these appeals.