LODGE 743, INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, Plaintiff,

v.

UNITED AIRCRAFT CORPORATION, Defendant.

LODGE 1746, INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, Plaintiff,

v.

UNITED AIRCRAFT CORPORATION, Defendant.

Civ. A. Nos. 9084, 9085.

United States District Court, D. Connecticut.

Dec. 21, 1971.

Plato E. Papps, Mozart G. Ratner, Stephen D. Gordon, Washington, D. C., for plaintiffs.

Joseph C. Wells, Washington, D. C., Wiggin & Dana, New Haven, Conn., for defendant.

## SUPPLEMENTAL RULING ON ISSUES OF PREJUDGMENT INTEREST AND QUARTERLY COMPUTATION

CLARIE, District Judge.

This action was originally brought pursuant to § 301 of the National Labor Relations Act and all the controversial substantive issues were adjudicated after a lengthy court trial, 299 F.Supp. 877. The only remaining issues are: (1) when should interest begin to run against the damages award, and (2) should the damages be computed on a quarterly basis.

The suit stems from employees' claims that the defendant employer had violated the terms of a Strike Settlement Agreement. The Court found that only 72 out of a total of more than 4,500 claimants failed to be recalled by the defendant to their rightful position under the seniority provisions of the Strike Settlement Agreement and were entitled to monetary damages. The parties stipulated to the amounts owed in 71 cases and the Court adjudicated the remaining one, after a hearing on the issue of mitigation of damages.

The Court's findings on the liability issue established that the defendant had administered the Strike Settlement Agreement on the whole in good faith. However, there were several erroneous interpretations of the contract in certain limited areas, as is more specifically set forth in the Court's original memorandum of decision. These interpretations resulted in an unlawful administration of the Agreement and caused an injustice to 72 employees, whom the Court identified only by classification and found should have been recalled at an earlier date.

The plaintiff-unions claim that the rule of law which the Court should apply in this case is the same as that used by the National Labor Relations Board in its administrative enforcement procedures, where unfair labor practices have been found under the National Labor Relations Act. All of the authorities cited by the plaintiffs allude to cases that fall under the Labor Relations Act. They claim that the case of Textile Workers Union v. Lincoln Mills of Ala., 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) established that § 301 contracts are federal contracts and should therefore be governed and enforced pursuant

to the principles of federal law. They assert that unless the Court awards interest from the inception of the wrongful conduct, the employee is not made whole; and that the denial of prejudgment interest or the failure to compute the interest quarterly would create a conflict between the ultimate findings of the Labor Board and the Court, since the Board followed the Court in finding violations and adopted the Court's "identification of (the) discriminatees." United Aircraft Corp., 77 LRRM 1785, 1789. Thus it is the unions' theory, that if the employee who is found to be entitled to damages did in fact earn more income in any quarter at other employment during the compensable period, than what he might have earned had he been lawfully recalled to his old job under the contract, any excess earnings in that period should not be included in the overall period for the computation of damages; and thus it could not be set off against any other quarterly period wherein his earnings were less than his regular earnings at his old job. In any such work quarter where he earned less than at his old job, he would be wholly compensated for the difference, provided he had exercised due diligence in the mitigation of his damages.

The defendant on the other hand, would distinguish between those cases, which arise from a breach of a specific contract, such as this Strike Settlement Agreement in controversy and those disputes which would normally arise out of an unfair labor practice case, where the employer is found to be guilty of unlawful, wrongful, and vexatious conduct. The defendant stresses that the amount of damages here was not possible to be ascertained by reasonable inquiry until the Court had made its findings on the question of liability. Furthermore, the damages here were totally unliquidated until it could be finally ascertained, whether a computation of the wronged employee's earnings in the interim period, equaled, were less than, or were greater than his earnings, for the same hourly work effort at his original job.

The law makes a distinction in the awarding of pre-judgment interest on damages in back pay disputes, between matters handled by enforcement agencies of a statutory administrative character, like the National Labor Relations Board, compared with the ordinary common law judicial action for the alleged breach of an employment contract. Congress empowered the Labor Board to establish its own administrative regulations and policies and to execute its own statutory enforcement disciplines.[1] These latter regulations were not channeled into the same legal pattern, as common law tort actions, nor were the Labor Board enforcement practices designed to operate the same as court litigation.

"The cases speak only of the National Labor Relations Board's power to award back pay under the Act without deductions of any amounts other than for wages or earnings received during the period. They are not decisive as to the propriety of deductions which should be made in determining the amount of damages in a common law action for damages for the breach of an employment contract. 'The fundamental basis for an award of damages for a breach of contract is just compensation for those losses which necessarily flow from the breach. Blair v. United States, [for Use and Benefit of Gregory-Hogan], 8 Cir., 150 F.2d 676.' Schlottman v. Pressey, 10 Cir., 195 F.2d 343, 345 . . . .

"The dispute before us arose because the parties interpreted their contract differently, and the principles of law involved had not been clearly settled previously. There was no bad faith or misconduct on either side. Although Ford was subsequently found

---

1. 29 U.S.C. § 156.

to have breached the contract, it is not a wrongdoer in the tort sense.

. . .

"The record supports the trial court's finding that the Company was not so unreasonable or so vexatious as to entitle (Orloski) to the payment of interest on the amount of his damages prior to the entry of the judgment." United Protective Workers v. Ford Motor Co., 223 F.2d 49, 53, 54 (7th Cir. 1955).

The First Circuit has recently denied prejudgment interest, where a jury had awarded damages for the breach of a labor contract, because it deemed it inappropriate for a court to attempt to assess prejudgment interest on such an award. One of the reasons expressed stated that the precise data required to compute interest was not available. It only inferentially suggested, that if it were a court trial rather than a jury trial, that procedure might have provided the necessary information on which interest might accurately be computed. Such a distinction, based upon a trial choice between a jury and a court is not tenable. There the court said:

"(The) plaintiffs request an award of prejudgment interest on their 'lost earnings' recovery. Such interest has been awarded by the NLRB in back pay cases . . . ..

"Such decisions are sound where, in an effort to 'make whole' the improperly discharged employee, an administrative agency ascertains actual wages lost and the agency or the court supplements them by interest from the date such wages should have been paid. But where a jury has made an award for lost earnings, we think it inappropriate for a judge to attempt to assess interest. In many cases the jury's verdict would not supply the basic data of dates and amounts on which interest could fairly be computed. Were we to brook an exception where, as here, the precise computation of the plaintiffs was accepted by the jury, we would in effect be condi-

tioning the right to interest on the happenstance of a precise stipulation precisely followed by a jury. We therefore agree with the action of the district court in refusing to award prejudgment interest." De Arroyo v. Sindicato De Trabajadores Packinghouse, AFL-CIO, 425 F.2d 281, 290 (1st Cir. 1970).

By statute, interest must at least run from the date of the entry of final judgment, under the provisions of 28 U.S.C. § 1961. The statute provides in part:

"Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . . Such interest shall be calculated from the date of the entry of judgment, at the rate allowable by State law."

The Appellate Court in the Second Circuit recently interpreted the application of this statute to the question of the court's awarding prejudgment interest, when it said:

"(C)ontrary to the apparently clear language of 28 U.S.C. § 1961, which speaks of an award of interest 'from the date of the entry of the judgment' and applies by its terms to 'any money judgment . . . recovered in a district court.' . . . TWA cites no authority in point for its position and we perceive no good reason to adopt its novel argument in the face of the plain words of Section 1961." TWA v. Hughes, 449 F.2d 51, 80 (2d Cir. 1971).

The Court's memorandum of decision, which decided the merits of this case, was filed on March 20, 1969. While that was not a "final judgment" in the fullest sense, since it did not identify the persons affected or the dollar amounts due, it did mark the time when the rights of the parties were judicially ascertained under the contract and findings on the factual and legal issues formalized. During the interim period, now approximating 30 months, the parties have been assembling and stipulating to an itemized statement of damages. These have been filed with the

Court at varying dates during this period.

■ Generally speaking, the key to the awarding of prejudgment interest, stems from the time when damages may be judicially ascertained as a liquidated sum. Recently, a state court action between the same parties and arising out of the same strike, was decided by the Connecticut State Supreme Court, wherein it reversed the trial court's award of prejudgment interest, as applied to compensatory damages; there the Court said:

"The defendants argue, however, that, since the plaintiff did not commence these actions until almost three years after August 12, 1960, interest should have been awarded only from the date of the judgment because the plaintiff was responsible for the delay. The plaintiff counters with the argument that after the actions were brought the preliminary pleadings indulged in by the defendants caused delay in getting the cases to judgment.

"Both arguments miss the mark for we believe the court erred in the award of interest from August 12, 1960, because it was based on an unliquidated claim. We have uniformly held interest to be allowable from the date of injury on damages resulting from tortious injury to property . . . . As the decisions indicate, however, such an award is limited to cases in which the damage is of a sort which could reasonably be ascertained by due inquiry and investigation on the date from which interest is awarded. Our previous discussion makes clear that the compensatory damages awarded in these cases is not of that description. Interest should have been awarded only from the date of the judgments." United Aircraft Corp. v. International Association of Machinists, 161 Conn. 79, 106–107, 285 A.2d 330, 345 (1971) (two cases).

■ The requirement that damages must not be unliquidated and must be susceptible of ascertainment before interest may be allowed for a breach of contract has been generally applied. Every breach of contract does not necessarily mean that damages must eventually flow therefrom; and damages cannot be liquidated, until the court has established the factual circumstances of culpability and ascertained what legal remedies are to be applied.

"The fundamental basis for an award of damages for breach of contract is just compensation for losses necessarily flowing from the breach. Michelson, Inc. v. Nebraska Tire & Rubber Co., 8 Cir., 63 F.2d 597, 601; 5 Williston on Contracts, Rev.Ed. 1338; Restatement of the Law of Contracts § 329. And while the breach of contract gives rise to a right of action, it is nevertheless possible for a breach to occur without causing damage." Blair v. United States for Use and Benefit of Gregory-Hogan, 150 F.2d 676, 678 (8 Cir. 1945).

See also, Tilghman v. Proctor, 125 U.S. 136, 8 S.Ct. 894, 31 L.Ed. 664 (1887); Schlottman v. Pressey, 195 F.2d 343, 346 (10th Cir. 1952); Carter Products, Inc. v. Colgate-Palmolive Co., 214 F.Supp. 383 (D.Md.1963); TWA v. Hughes, supra.

■ In order to compensate the plaintiffs fairly, the Court finds that damages should be computed for the overall period, wherein the employee's actual earnings experience was affected and not on a piece meal quarterly basis. Prejudgment interest should be allowed from the date of the filing of the Court's memorandum of decision on March 20, 1969, at the statutory rate provided for final judgments under state law. Conn.Gen.Stat. §§ 52–349 and 37–1. Thus, instead of computing prejudgment interest commencing at variable dates, when each stipulation for certain groups of employees was filed, equity and justice requires that it be computed from the date of the filing of the Court's memorandum of decision. Interest shall commence from March 20, 1969, based upon the overall damage period and not by quarterly period computation. The

rate of interest allowed shall be in accordance with Connecticut state law.

"We do, however, agree with TWA that under New York law, applicable here pursuant to 28 U.S.C. § 1961 (interest on the judgment is calculated 'at the rate allowed (on such judgments) by State law') . . . ." TWA v. Hughes, *supra,* 449 F.2d at 80.

Allowable interest as herein provided shall be computed and incorporated within the terms of the Court's findings; it shall be stipulated to by counsel in the form of a final judgment and submitted to the Court within ten (10) days. So ordered.