Charles NEDD et al.

v.

**UNITED MINE WORKERS OF AMERICA et al.**

Civ. No. 8796.

United States District Court,
M. D. Pennsylvania.

April 1, 1980.

James Palermo, Hazleton, Pa., John R. McConnell, Philadelphia, Pa., for plaintiffs.

Carol A. Mager, Atty. at Large, Philadelphia, Pa., James W. Scanlon, Scranton, Pa., Joseph A. Yablonski, Harrison Combs, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

This is a derivative action brought by pensioned coal miners on behalf of the Anthracite Health and Welfare Fund ("The Fund"). Plaintiffs have charged the United Mine Workers of America ("The Union") with responsibility for the failure of the Fund's trustees to collect tonnage royalties from anthracite coal mine operators accruing from June 7, 1946 to January 23, 1969. The case is presently before this court on remand from the Court of Appeals. The matters briefed, argued, and ready for disposition at this time are: (1) whether plaintiffs are entitled to prejudgment interest on the amount of principal liability, if any, that is ultimately found to be due, and (2) whether the statute of limitations and/or the equitable doctrine of laches preclude recovery of collection delinquencies that accrued more than six years prior to the commencement of this lawsuit. Before considering these issues, however, I believe it is necessary to address the Union's claim that principal liability may only be predicated on individual adjudications concerning the adequacy of collection efforts undertaken with respect to each delinquent operator.

### I. *THE UNION'S LIABILITY*

The causes of action asserted herein arose during the precipitous decline of the anthracite industry. From 1946 to 1968 the tonnage of coal produced, the amount of revenue earned, and the number of persons employed in the anthracite fields dropped dramatically. Fund income was keyed to production and, as output fell, the Fund, which operated on a "pay-as-you-go" basis, was unable to maintain contemplated benefit levels.

Plaintiffs have contended that the trustees' failure to strictly enforce royalty obligations exacerbated the Fund's problem of declining revenues and have sought to impose responsibility on the Union because during the relevant period the Union enjoyed a dominant position on the Fund's Board of Trustees in violation of section

302(c)(5) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186, which requires equal labor-management representation on employee trust funds created through the collective bargaining process. Four distinct theories of liability have been asserted: (1) tortious interference with the collective bargaining agreement, a federal common-law action recognized under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(c) (hereinafter section 301); (2) breach of the federal common-law duty of fair representation; (3) breach of fiduciary duties implied from section 302 of the Labor Management Relations Act, 29 U.S.C. § 186 (hereinafter section 302); and (4) violations of the Pennsylvania common-law of trusts. Authority to entertain this suit is predicated on 28 U.S.C. § 1331, 28 U.S.C. § 1337, and the doctrine of pendent jurisdiction.

The Court of Appeals for the Third Circuit, vacating this court's judgment entered in defendants' favor on April 13, 1976,[1] has found that plaintiffs' federal causes of action are sufficient to support pendent jurisdiction, that plaintiffs have established a breach of trust, that the Union is liable for this breach, and that the burden is now on the Union to show that losses would have occurred despite the breach. *Nedd v. UMW*, 556 F.2d 190 (3rd Cir. 1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978). The Court of Appeals remanded the case "for further proceedings in which the liability of the Union shall be redetermined by the application of the fiduciary standards of conduct and burden of proof set forth in this opinion." *Id.* at 214.

The Union has argued that the Court of Appeals decision was not an adjudication of its liability for collection delinquencies and that plaintiffs must now establish a breach of trust for each royalty account that went uncollected. I am satisfied, however, that the Court of Appeals has found the Union liable under each of the theories asserted by plaintiffs. Close examination of its opinion reveals that the Court of Appeals concluded that the Union, by virtue of the § 302(c)(5) equal representation violation, had placed itself in the position of the trustees with respect to collection of delinquent royalties, and that the Union *qua* trustee was therefore bound by fiduciary standards of conduct. The Court of Appeals further found that (a) the Union's liability under any of the theories advanced by plaintiffs required no distinct factual findings; (b) the Union, "in a position of inherent conflict between its fiduciary obligation to the Fund beneficiaries and its duties toward the working miners whose jobs might be imperiled by vigorous [royalty] enforcement," *id.* at 210, breached its duty of loyalty by pursuing a royalty collection policy that prima facie benefited working miners to the detriment of pensioned miners; (c) the Union's enforcement efforts, while in control of the Fund, were not performed with the degree of common skill, common prudence, and common caution required of a fiduciary; and (d) the burden was now on the Union to show that losses would have occurred in the absence of a violation of fiduciary obligations. Thus, it is clear that the matter is presently before this court, not to decide whether the Union is to be held liable for

1. The conclusions reached by this court after trial of the matter are embodied in the following summary, which appears at page 120 of the April 13th Memorandum:

    1. This court does not have subject-matter jurisdiction of plaintiffs' claims;

    2. However, assuming that there is jurisdiction,

    A. the statute of limitations was tolled by the trustees' actions and does not bar this suit;

    B. the trustees are not liable either for violation of Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C. § 186, or for

breach of the common law duty of undivided loyalty of a trustee;

    C. although past trustees were guilty of breach of a trustee's duty to enforce claims by virtue of their negligent handling of the problem of operator delinquencies, none of the trustees who are defendants in this case may be held liable for that breach;

    D. the Union is not liable under any of the theories advanced by plaintiffs; and

    E. if the Union is liable, it is entitled to have deducted from any recovery against it an amount equal to the total sum it has loaned the Fund since its inception.

breach of trust on a company-by-company basis, but to determine the *extent* of the Union's liability for pursuing a policy that would not have been followed by a reasonable man exercising common skill, prudence and caution, and which prima facie benefited working miners to the detriment of pensioned miners.

Directly and materially affecting the extent of the Union's exposure to damages are the questions of prejudgment interest and statute of limitations. Because the continuing breach of trust that occurred throughout the 1950's was not reasonably discoverable until 1961, and due to the longevity of this action, plaintiffs' claim for prejudgment interest now exceeds the asserted principal liability of $9,887,286.03. In addition, since much of the royalty collection delinquencies occurred more than six years before the commencement of this action in 1965, the statute of limitations defense has the potential to disgorge a large portion of the principal liability. Since these issues impact substantially on the size of any damages award, they have been isolated from other questions concerning principal liability and prepared for separate treatment.[2]

## II. *PREJUDGMENT INTEREST*

The Union argues that federal law controls the prejudgment interest issue and that the rule fashioned by the federal courts commits the matter to the trial court's discretion. The Union further urges that this discretion be exercised to deny prejudgment interest. Plaintiffs, on the other hand, contend that (a) state law governs the pendent claim, (b) federal law controls the federal claims, and (c) both the state and federal rules grant prejudgment interest under the circumstances of this case as a matter of right. Alternatively, plaintiffs argue that under the federal rule of discretion entitlement to prejudgment interest is presumed, and that the Union

has failed to demonstrate exceptional circumstances sufficient to defeat the presumption.

### A. *The Applicable Law*

Initially, it must be ascertained whether the Union's liability for prejudgment interest is to be determined under federal law, Pennsylvania law, or both. A careful reading of the Court of Appeals decision in this case reveals that plaintiffs have established a breach of trust under state and federal law. The following passages from the court's opinion are instructive:

> [T]he Union by virtue of the § 302(c)(5) equal representation violation, placed itself in the position of the Trustees for all practical purposes with respect to the enforcement of the royalty obligations of the mine operators. *Whether one looks to the Pennsylvania law of trusts or to an appropriate federal standard created under any of the three federal legal theories asserted by the plaintiffs the Union must, in the circumstances of this case, be held to the same standard of conduct in discharging its assumed obligations toward the Fund as that of the Fund's nominal Trustees.*

556 F.2d at 209 (emphasis added).

> The pensioners established that the Union Trustees, in illegal domination of the Fund, were in a position of conflicting loyalties, and that in that position they pursued a policy which prima facie benefitted [sic] one group to the detriment of another. At that point the burden of explanation or justification should properly have shifted to the fiduciaries.[36]
>
> [36] *Although this is a federal common law rule of union pension fund trustees' fiduciary duty, we think it is consistent with state law as well.*

556 F.2d at 210 (emphasis added) (footnote omitted).

> "In general, one who seeks to surcharge a trustee bears the burden of

2. Although not initially raised by the parties, reply briefs have addressed the Union's liability for collection delinquencies listed on the Fund's ledgers for nonsignatory mine operators. I believe that this matter should be considered in determining the Union's principal liability and will not rule on the question at this time.

proving that the trustee breached an applicable fiduciary duty. However, when a beneficiary has succeeded in proving that the trustee has committed a breach of duty and that a related loss has occurred, we believe that the burden of persuasion ought to shift to the trustee to prove, as a matter of defense, that the loss would have occurred in the absence of a breach of duty. We believe that, as between innocent beneficiaries and a defaulting fiduciary, the latter should bear the risk of uncertainty as to the consequences of its breach of duty."
*This is an appropriate federal rule of fiduciary obligation as well.*
556 F.2d at 211 (emphasis added) (footnote and citations omitted).

■ It is thus clear that the Court of Appeals found the Union to be in breach of trust under both federal and state law. Therefore, Pennsylvania damage rules, including prejudgment interest principles, govern any recovery under the pendent cause of action, *see Holmes v. Bateson,* 434 F.Supp. 1365, 1390–91 (D.R.I.1977), *aff'd in part, rev'd in part on other grounds,* 583 F.2d 542 (1st Cir. 1978), and federal prejudgment interest standards apply to the federal claims. *See, e. g., Southern Pacific Co. v. Miller Abattoir Co.,* 454 F.2d 357, 362 (3rd Cir. 1972); *Meyers v. Moody,* 475 F.Supp. 232, 251 (N.D.Tex.1979).

The Union argues, however, that this court's order of June 9, 1978, which sought to set an agenda for resolving liability-related questions, limits the scope of the damages inquiry to the federal claim asserted under section 302 because the order allows plaintiffs to recover without demonstrating inadequacy of individual collection efforts and *only* the section 302 claim would permit recovery without company-by-company adjudications of breach of trust. Therefore, argues the Union, only federal prejudgment interest rules should be applied.

The unsound premise on which the Union's argument rests is that general principles of the law of trusts would require plaintiffs to establish culpability on a com-

pany-by-company basis. The above analysis and quoted passages from its opinion demonstrate that the Court of Appeals considered that (a) the state and federal causes of action were *in pari materia,* (b) plaintiffs had established a breach of trust, (c) losses had occurred as a result of the breach, and (d) federal and state law shifted the onus to the Union to show what losses would have occurred despite the breach. Thus, this case is not now proceeding independently under section 302, but under both the federal and state claims.

There is, however, another argument for rejecting Pennsylvania law that has not been pursued by the parties. The Court of Appeals suggested that state regulation of the conduct of union pension fund trustees is preempted by federal law. Without deciding the question, Judge Gibbons stated:

[I]t seems plain that the proper conclusion is that federal law should preempt all state law inconsistent with the federal common law standards for fiduciary conduct by union pension fund trustees. *See, e. g.,* Employee Retirement Income Security Act of 1974, 88 Stat. 829 *et seq.,* 93d Cong., 2d Sess. (1974). Section 514(a) of the Act, 29 U.S.C. § 1144(a) provides:

(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

This subsection mandates federal supremacy of Part IV of Subchapter I, dealing with trustees' fiduciary duties, over inconsistent state laws. . . . The heart of this provision is § 1104(a)(1)(B), which establishes a "prudent man" standard. This rule, which supersedes all inconsistent state law, is no different from, nor more explicit than, the federal fiduciary duty under § 302 of the Taft-Hartley Act. . . .

Any fiduciary duties applicable to the present case must be fashioned from federal common law under § 302. But Congress' plain intent to apply the § 302 standard preemptively in Subchapter I, Part 4 of ERISA, guides us to a like conclusion for § 302 common law.

556 F.2d at 205–06, n.31.[3]

If, consistent with the Court of Appeals opinion, state regulation of union pension fund trustee conduct is preempted, then inconsistent state damage rules would appear to be inapplicable. For example, if state law exacted prejudgment interest for a breach of trust as a matter of right, but applicable federal law committed the question to the trial court's discretion or did not recognize any entitlement to such an award, it would seem to follow that the interests in uniformity underlying the preemption of inconsistent state substantive rules would also support rejection of inconsistent state damage rules. The preemption issue, however, is academic here because, contrary to plaintiffs' assertions, I find that both state and federal law make the award of prejudgment interest for breach of trust discretionary and utilize essentially identical factors to guide the exercise of discretion.

B. *Pennsylvania Law*

■ Prejudgment interest is "compensation allowed by law . . . as additional damages for loss of use of the money due as damages, during the lapse of time since the accrual of the claim." C. McCormick, Handbook of the Law of Damages § 50 (1935) (hereinafter referred to as *McCor-*

*mick*). Pennsylvania decisional law regards prejudgment interest as a component of damages. Thus, for example, in *Jones Estate*, 400 Pa. 545, 563, 162 A.2d 408, 417 (1960), the court stated: "Such an allowance is 'not as interest eo nomine but by way of damages.'" *Quoting Kenin's Trust Estate (No. 1)*, 343 Pa. 549, 566, 23 A.2d 837 (1942).

It does not follow, however, that prejudgment interest is awarded as a matter of right. Prejudgment interest "is not a congenital rule in our law." *Board of Commissioners v. United States*, 308 U.S. 343, 351, 60 S.Ct. 285, 288, 84 L.Ed. 313 (1939). Recognition of interest as compensation for detention of money is of relatively recent origin. Initially, prejudgment interest was granted as a matter of right only in actions at law where there existed an obligation to pay a definite fixed sum of money. *McCormick* § 51. Although this rule was subsequently extended to actions at law involving damages ascertainable with mathematical precision, there has been no parallel development awarding prejudgment interest as a matter of right in enforcing equitable claims. As McCormick explains:

The practice at law of giving interest damages has been liberalized, first, by extending the realm of the jury's discretion, and, second (in America), by converting what was allowable in their discretion to a claim collectible as of right, by a rule of law. This tendency in respect to claims at law to withdraw the matter from the jury's discretion is probably wholesome, because an untrained

---

**3.** Federal courts that have addressed the issue appear split on whether federal jurisdiction over suits against union pension fund trustees for breach of fiduciary duties in the day-to-day administration of the fund is conferred by section 302. The majority view seems to abjure federal jurisdiction over breach of trust actions, and reviews such matters under traditional trust law. *See, e. g., Ader v. Hughes*, 570 F.2d 303, 306 (10th Cir. 1978); *Haley v. Palatnik*, 509 F.2d 1038, 1040 (2nd Cir. 1975); *Beam v. Internat'l Organization of Masters*, 511 F.2d 975, 979 (2nd Cir. 1975); *Mosley v. Nat'l Maritime Union Pension and Welfare Plan*, 438 F.Supp. 413, 419 n.5 (E.D.N.Y.1977). Other

courts have taken the position that section 302 confers jurisdiction over breach of fiduciary duty suits brought against union pension fund trustees. *See, e. g., Lewis v. Mill Ridge Coals, Inc.*, 298 F.2d 552, 558 (6th Cir. 1962); *Morgan v. Laborers Pension Trust Fund for Northern California*, 433 F.Supp. 518, 524 (N.D.Cal. 1977); *Burroughs v. Bd. of Trustees of the Pension Trust Fund for Operating Engineers*, 398 F.Supp. 168, 174–75 (N.D.Cal.1975), *aff'd*, 542 F.2d 1128 (9th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977). The Court of Appeals opinion in *Nedd* appears to espouse the latter view.

body is not likely to exercise such a discretion very wisely or very consistently with results reached by other juries. In equity, however, even where, as in England and most states to-day the same courts administer both law and equity, the judge sits usually without a jury and determines the amount of damages for himself. Consequently, the tendency has always been for equity judges to allow or deny interest as damages with more freedom and flexibility of adjustment to the individual case than in the common-law courts, which tend to seek general rules which they can prescribe for the guidance of juries.

*McCormick* § 59.

■ The law of trusts, which relegates the *cestuis que trust* to equitable rather than legal remedies, *see, e. g., Nedd v. UMW*, 556 F.2d at 207, follows the tendency to allow the court sitting in equity discretion to grant or deny prejudgment interest. Thus, Bogert notes:

When interest will be allowed, at what rate, and from what date is wholly in the discretion of the court. 'As a general rule, in the absence of anything to the contrary, the question of requiring a trustee to pay interest on the trust funds is one which must depend upon the facts and circumstances in each particular case; and where good conscience requires that the trustee be charged with interest, the payment thereof ought to be exacted.'

G. Bogert, The Law of Trusts and Trustees § 863 (2nd ed. 1962) (hereinafter referred to as *Bogert*).

Pennsylvania trust law is not to the contrary. *See generally* 39 P.L.E. *Trusts* § 281 (1961). The equitable rule of discretion was applied in *Kenin's Trust Estate (No. 1)*, *supra*, where the court announced that prejudgment is not awarded as interest *eo nomine* but by way of damages. In holding that a prejudgment interest award was proper for the failure to distribute life insurance proceeds according to the trust instrument, the court quoted approvingly from *Agnew Co. v. Board of Education*, 83 N.J. Equity 49, 89 A. 1046 (1914): "Unless a case be found which is a conclusive authority establishing a precedent, the safest way for a court of law or equity is to decide all questions pertaining to interest according to the plainest and simplest considerations of justice and fair dealing." *Kenin's Trust Estate (No. 1)*, 343 Pa. at 565, 23 A.2d at 845.

In the earlier case of *Kipp's Estate*, 286 Pa. 90, 96, 132 A. 822, 824 (1926), the Pennsylvania Supreme Court restated equitable principles governing the award of prejudgment interest in breach of trust cases:

"The liability of the trustee to pay interest must be determined from the character of the trust, and the circumstances attending its administration. The general rule is that a trustee, acting in good faith, who keeps funds in his hands ready to disperse, without mingling them with his own monies, should not be charged with interest thereon. * * * Ordinarily a trustee is not chargeable with interest on the trust funds unless he has used them for his own profit, or invested them so as to produce interest, or suffered them to lie idle when they might have been invested, or needlessly delayed settlement and surrender of the property, or in some other way showed a want of diligence and good faith."

The rule of discretion was reiterated in *Reid v. Reid (No. 2)*, 237 Pa. 176, 85 A. 85 (1912). There, the court, in considering whether an award of prejudgment interest for failure to deposit funds in an interest bearing account was proper, stated that "[w]hether or not a trustee should be made to pay interest depends largely upon the circumstances in each case, and no general rule can be laid down upon the subject." *Id.* at 181, 85 A. at 87.

Significantly, the rule of discretion was recently reaffirmed in the case of *In re Estate of McCrea*, 475 Pa. 383, 380 A.2d 773 (1977). The court's opinion, although not specifically addressing the issue, evidenced the continued vitality of the rule of discretion by reviewing the record to determine

whether the interest surcharge was sustainable.

Indeed, use of discretion in passing upon a claim for interest in a breach of trust case is statutorily mandated. *See* 20 Pa.Cons. Stat.Ann. § 7183 (1975)(Purdon).[4] While it is uncertain that the Pennsylvania Probate, Estate and Fiduciaries Code, 20 Pa.Cons. Stat.Ann. §§ 101 *et seq.*, would cover a union pension trust fund,[5] I am satisfied that the codified rule of discretion that has been followed in a long, unbroken line of cases would be applied by the Pennsylvania Supreme Court were it confronted with the circumstances of this case.

Plaintiffs' assertion that Pennsylvania trust cases support a preemptive entitlement to an interest surcharge is untenable. The court in *Jones Estate, supra,* as had the court in *McCrea's Estate, supra,* examined the evidence to determine whether the prejudgment interest award was supportable and did not purport to recognize a *per se* right to prejudgment interest. The award of prejudgment interest in *Carr's Estate (No. 1),* 24 Pa.Super. 369 (1904), was based in part upon "principles of good faith and fair dealing which ought to govern in the management of trust estates." *Id.* at 372. Finally, *Klines's Estate,* 280 Pa. 41, 124 A. 280 (1924), involved aggravating circumstances indicative of gross negligence and the court did not address the question of whether prejudgment interest should be awarded as a matter of right in an equitable proceeding for breach of trust. In short, plaintiffs have not cited and my independent research has not uncovered any Pennsylvania trust case which holds that prejudgment interest is to be awarded as a matter of right.[6]

Indeed, plaintiff's argument for prejudgment interest under Pennsylvania law does not focus on the law of trusts. Rather, it stresses the compensatory nature of such an award and proceeds from the following syllogism:

> Under Pennsylvania law, interest is awarded as a matter of right for breach of contract. Had the trustees sued on the breach of contract to make royalty payments they would have recovered the interest. Therefore, plaintiffs are entitled to the principal plus the interest that would have been collected had the trustees successfully maintained their suits.

This simple deductive reasoning has facial appeal but does not withstand analysis. Although the premises are undoubtedly correct, the conclusion does not follow. This is not an action at law to enforce contractual commitments. Rather, this is an equitable proceeding for an accounting of the trustees' stewardship, *see Nedd v. UMW,* 556 at 206–07, and the law of contracts cannot be used to make an end run around the discretion afforded the court sitting in equity.

Furthermore, compensation, although clearly the most important factor to be considered under Pennsylvania law in decid-

---

**4.** Section 7183 of 20 Pa.Cons.Stat.Ann. provides in pertinent part:

The provisions concerning accounts, audits, reviews, distributions and rights of distributees in trust estates shall be the same as those set forth in this code for the administration of a decedent's estate, with regard to the following:

.    .    .    .    .

(11) Liability for interest, as in section 3544  .    .  . .

Section 3544 of 20 Pa.Cons.Stat.Ann. provides:

A personal representative who has committed a breach of duty with respect to estate assets shall, in the discretion of the court, be liable for interest, not exceeding the legal rate on such assets.

**5.** It appears that the Act applies only to trusts which are within the Orphans' Court's jurisdiction. *See* 20 Pa.Cons.Stat.Ann. § 102. The Orphans' Court has jurisdiction over *inter vivos* trusts, which do not include pension trusts. *See* 20 Pa.Cons.Stat.Ann. § 711.

**6.** Although several Pennsylvania cases have allowed prejudgment interest as a matter of course, *e. g., Glauser Estate,* 350 Pa. 192, 205–06, 38 A.2d 64 (1944); *Carr's Estate (No. 1),* 24 Pa.Super. at 372, none have professed to rule that prejudgment interest is granted as a matter of right. Indeed, a major problem in ascertaining the law of prejudgment interest is the perfunctory manner in which it is normally handled in the reported decisions.

ing whether to exact prejudgment interest,[7] is not alone dispositive. Pennsylvania courts also consider whether the trustee has been unjustly enriched or acted in bad faith.[8] In addition, the courts of the Commonwealth have sometimes cited aggravating circumstances as justifying a prejudgment interest surcharge.[9] In short, prejudgment interest awards under Pennsylvania law are based on "justice and fair dealing" and are not made as a matter of right.[10] Thus, even assuming that the hypothetical loss of interest recoverable by the trustees in breach of contract actions against the delinquent mine operators provides a compensatory justification for the levy here, this factor would not necessarily be dispositive.[11]

### C. Federal Law

■ Although there is no general controlling congressional directive, federal decisional law has long regarded prejudgment interest as a component of damages. *See, e. g., Young v. Godbe*, 82 U.S. (15 Wall.) 562, 21 L.Ed. 250 (1872). The cases, however, have generally refrained from impos-

ing prejudgment interest as a matter of right. For example, Justice Swayne, speaking for the Court in *National Bank of the Commonwealth v. Mechanics' National Bank*, 94 U.S. (4 Otto) 437, 440, 24 L.Ed. 176 (1876), stated:

> The plaintiff in this action was entitled, *ex equo et bono*, to the money sought to be recovered. Where the right to recover exists in this class of cases, it includes interest as well as principal, unless there is something which would render the payment of the former inequitable.

> Kent, C. J., said upon this subject: 'Each case will depend upon the justice and equity arising out of its peculiar circumstances, to be disclosed at the trial.' [citations omitted]

And in *Billings v. United States*, 232 U.S. 261, 286, 34 S.Ct. 421, 426, 58 L.Ed. 596 (1914), Chief Justice White wrote:

> Thus, as to the necessity [of] a statute it was long ago here decided in view of the true conception of interest, that a statute was not necessary to compel its payment where in accordance with principles of

---

**7.** *See, e. g., In re Estate of McCrea*, 475 Pa. at 387; *Lewis Estate*, 349 Pa. 455, 37 A.2d 559 (1944); *Kenin's Trust Estate (No. 1)*, 343 Pa. at 563, 23 A.2d 837; *Kipp's Estate*, 286 Pa. at 96, 132 A. 822 (1926); *Reid v. Reid (No. 2)*, 237 Pa. at 181, 85 A. 85 (1912); *Elton's Estate*, 48 Pa.Super. 585 (1912).

**8.** *See, e. g., Jones Estate*, 400 Pa. at 562, 162 A.2d 408; *Kipp's Estate*, 286 Pa. at 96, 132 A. 822; *Eisenlohr's Estate (No. 1)*, 258 Pa. 431, 102 A. 115 (1917); *Meyer Estate*, 173 Pa.Super. 592, 98 A.2d 444 (1953).

**9.** *E. g., Lare Estate*, 436 Pa. 1, 257 A.2d 556 (1969); *Kline's Estate*, 280 Pa. at 49, 124 A. 280.

**10.** The parties have both asserted that Pennsylvania law and the Restatement (Second) of Trusts are in accord. Section 207 of the Restatement provides in pertinent part:

> (1) Where the trustee commits a breach of trust and thereby incurs a liability for a certain amount of money with interest thereon, he is chargeable with interest at the legal rate or such other rate as the court in its sound *discretion* may determine but in any event he is chargeable with interest actually received

by him or which he should have received. [emphasis added]

The Restatement is ambiguous. It states that the rate of prejudgment interest is discretionary when a trustee, by virtue of a breach of trust, "incurs a liability for a certain amount of money with interest thereon." Section 207 does not state that the exaction is a matter of right in all breach of trust cases; nor does it state that the award is discretionary in all breach of trust cases. The Restatement draftsmen's citation to *Bogert, supra*, however, supports the conclusion that the decision is to be tempered by consideration of the equities. Furthermore, to the extent that the Restatement recognizes discretion to fix the interest rate, it necessarily implies the ability to award no interest at all. But even if the Restatement is read as recognizing an irrebuttable right to an interest assessment in all breach of trust cases, I do not feel bound by it because Pennsylvania law clearly requires examination of equitable factors before an award is made.

**11.** Whether the hypothetical recovery of prejudgment interest provides a compensatory justification for an award here is discussed later in the opinion. *See* note 13.

equity and justice in the enforcement of an obligation, interest should be allowed.

. . . . .

And the decisions of this court have often since exemplified the principle by considering the question of the responsibility for interest from the point of view of reason and justice, even though no express statute existed for compelling this payment.

*See also Miller v. Robertson,* 266 U.S. 243, 258–59, 45 S.Ct. 73, 79, 69 L.Ed. 265 (1924).

In *Board of Commissioners v. United States,* 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939), Justice Frankfurter restated the federal law of interest applicable to governmental actions: "[I]nterest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable." *See also Rodgers v. United States,* 332 U.S. 371, 373, 68 S.Ct. 5, 6, 92 L.Ed. 3 (1947). This rule of discretion was subsequently applied to non-governmental actions. *E. g., Blau v. Lehman,* 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962) (action under § 16(b) of the Securities Exchange Act); *Thomas v. Duralite Co., Inc.,* 524 F.2d 577, 589 (3rd Cir. 1975) (securities fraud case); *Pete v. United Mineworkers' Welfare and Retirement Fund of 1950,* 517 F.2d 1275, 1288–89 (D.C. Cir. 1975) (*en banc*) (action challenging union pension eligibility requirements). Moreover, the rule has been employed in actions under the Labor Management Relations Act. *E. g., Lodges 743 and 1746, International Association of Machinists and Aerospace Workers v. United Aircraft Corp.,* 534 F.2d 422, 445–47 (2nd Cir. 1975), *cert. denied,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976); *Oil, Chemical & Atomic Workers International Union, Local 4–447 v. American Cyanamid Co.,* 546 F.2d 1144 (5th Cir. 1977).

Each of the above-cited cases involved "liquidated" or calculable damages. None

of the cases, however, followed the general common-law liquidated/unliquidated damages dichotomy under which prejudgment interest is awarded as a matter of right on liquidated damages and committed to the court's discretion on unliquidated damages. For example, in *American Cyanamid, supra,* the Court of Appeals for the Fifth Circuit ruled that the district court had not abused its discretion in denying prejudgment interest on a damages award for unpaid vacation benefits.

The Court of Appeals' decision in *Lodges 743 and 1746, International Association of Machinists v. United Aircraft Corp., supra,* is also illustrative. The plaintiff unions had established that the defendant company had breached the collective bargaining agreement and the district court awarded damages plus prejudgment interest from the date on which its principal findings of fact and conclusions of law had been filed (final judgment was not entered until more than three years later). The trial court chose that date as the point when damages could be "ascertained as a liquidated sum." 336 F.Supp. 811, 815 (D.Conn.1971). On appeal, the unions urged application of the National Labor Relations Board's policy of surcharging interest on back pay awards to the date when the damages were sustained. The Court of Appeals rejected both the NLRB and the district court approaches, stating:

> Whether to award prejudgment interest in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts. . . . In suits for breaches of labor agreements, as in other areas, a vital ingredient in the determination whether to award prejudgment interest is a desire to make whole the party injured by the breach, but in appropriate circumstances, compensatory principles 'must be tempered by an assessment of the equities.'

*Id.* at 446–47 (citations omitted).[12]

*Aerospace Workers v. United Aircraft Corp.,* 604 F.2d 4, 5 n.1 (2nd Cir. 1979).

12. On remand, the district court affirmed his previous award of prejudgment interest. *Lodge 743, Internat'l Ass'n of Machinists and*

Plaintiffs argue, however, that at least this circuit and the Court of Appeals for the Fifth Circuit adhere to the rule that prejudgment interest automatically attaches to a claim seeking damages that are ascertainable with mathematical precision, and cites as controlling authority, *Eazor Express, Inc. v. International Brotherhood of Teamsters*, 520 F.2d 951 (3rd Cir.), *cert. denied*, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1975); *West v. Harris*, 573 F.2d 873 (5th Cir. 1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979); and *Louisiana & Arkansas Railway Co. v. Export Drum Co.*, 359 F.2d 311 (5th Cir. 1966). Since this court is bound by the rulings of the Court of Appeals for the Third Circuit, the *Eazor* decision will be examined first.

*Eazor* involved consolidated actions brought by employers under § 301 for losses sustained as a result of breaches of a no-strike agreement. Trial of the matter was bifurcated. The district court initially held that the defendant unions had breached the no-strike pledge and then entertained evidence on damages. The trial court's findings of fact and conclusions of law on the damages issue are embodied in its opinion published at 376 F.Supp. 841 (W.D.Pa.1974). This opinion does not address the question of prejudgment interest, but an award was included in the judgment entered against the defendant unions.

On appeal, the unions objected to the award on the ground that it was improper to surcharge interest in a suit for unliquidated damages. The *Eazor* panel's discussion of the interest award consists entirely of the following statement:

The general rule is that when the damages resulting from a breach of contract are ascertainable with mathematical precision prejudgment interest is awardable as of right. If, however, the claim is not for a liquidated sum but is nonetheless pecuniary rather than personal in its nature many courts will add prejudgment interest to the amount which they find would have been just compensation at the time of the breach, when in the exercise

of their discretion it appears necessary to do so in order to arrive at fair compensation at the time of judgment. *Miller v. Robertson*, 1924, 266 U.S. 243, 258, 45 S.Ct. 73, 69 L.Ed. 265; *United States v. Bethlehem Steel Corp.*, 3 Cir. 1940, 113 F.2d 301, 308, aff'd, 1942, 315 U.S. 289, 62 S.Ct. 581, 86 L.Ed. 855; *Cold Metal Process Co. v. United Engineering & Foundry Co.*, 3 Cir. 1956, 235 F.2d 224, 231; *Marrazzo v. Scranton Nehi Bottling Co.*, 1970, 438 Pa. 72, 263 A.2d 336; *Restatement of Contracts* § 337; *McCormick on Damages*, 1935, 356. We think that this is an appropriate rule for discretionary application as a matter of federal law in actions brought under section 301 of the Labor Management Relations Act for breaches of labor agreements and that the district court did not err in its discretionary application of the rule in this case.

*Id.* at 973.

The cases cited by the Court of Appeals, with the exception of *Miller v. Robertson*, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265 (1924), all concern Pennsylvania law. The above-quoted passage, constituting as it does the sole evidence of the consideration given the prejudgment interest issue in both the trial and appellate courts, does not demonstrate any regard for controlling federal law and indicates that both courts pretermitted the question. While the Court of Appeals' restatement of the general rule on liquidated damage claims appears to be a sound depiction of the general common-law, it must be regarded under the circumstances of the case as *obiter dictum*.

Indeed, to the extent that *Eazor* may be read as embracing the liquidated/unliquidated dichotomy as federal law, it is undermined by the opinion in *Thomas v. Duralite Co., Inc.*, 524 F.2d at 589, issued less than two months after *Eazor*, in which Judge Weis made the following generalization: "Interest is not to be recovered merely as compensation for money withheld but, rather, in response to considerations of fairness. It should not be imposed when its exaction would be inequitable." *Id.* The District

Court's pro forma award of prejudgment interest was vacated in *Thomas* and the case remanded with instructions to indicate reasons supporting prejudgment interest if the trial court again decided to make such an assessment.[13]

I conclude that the rule stated in *Thomas* accurately reflects the view followed in the circuit. I do not believe that the panel in *Eazor* intended to sweep away by implication the federal rule of discretion applied in a myriad of situations.[14]

Analysis of the cases from the Court of Appeals for the Fifth Circuit cited by plaintiffs also belies their assertion of a preemptive right to prejudgment interest on claims involving damages ascertainable with mathematical precision. *West v. Harris, supra,* and *Louisiana & Arkansas Railway Co. v. Export Drum Co., supra,* emphasized the compensatory nature of a prejudgment interest award, and did not purport to embrace as federal law the general rule automatically awarding prejudgment interest on liquidated claims. Thus, Judge Clarke wrote in *West v. Harris*, 573 F.2d at 883:

> The court in *Export Drum* relied *in part* on the fact that a sum certain was in controversy; however, prejudgment interest is also available on an unliquidated claim when necessary to arrive at fair compensation. In this case, although the amount of liability was not liquidated, it was based upon the readily ascertainable value of damages to property rather than personal injury. Under such circumstances it has been held that the better practice is to allow prejudgment interest as an element of compensation in the

absence of strong equities to the contrary.

> The major factor permeating these cases allowing prejudgment interest is that such an award is necessary to compensate an injured plaintiff. As a corollary, prejudgment interest is not allowed when it is not a necessary element of compensation. [emphasis added] [citations omitted].

It should also be noted that the Court of Appeals for the Fifth Circuit has applied the general federal rule of discretion in a section 301 action. *See Oil, Chemical & Atomic Workers International Union, Local # 4-447 v. American Cyanamid Co.,* 546 F.2d 1144 (5th Cir. 1977). Thus, I do not believe that the Fifth Circuit espouses a rule of automatic and preemptive entitlement to prejudgment interest on liquidated claims. Nor do I feel compelled by the authorities cited by plaintiffs to abnegate my responsibility under the generally prevailing rule to exercise discretion in the matter of prejudgment interest. Accordingly, the equities of a prejudgment interest award under the circumstances of this case will be considered.[15]

### D. *Weighing the Factors*

■ Pennsylvania and federal law recognize four basic factors to be weighed in considering a claim for prejudgment interest: (1) whether the claimant has been less than diligent in prosecuting the action; (2) whether the defendant has been unjustly enriched; (3) whether an award would be compensatory; and (4) whether countervailing equitable considerations militate

---

13. Although *Thomas* appears to have involved an unliquidated sum, Judge Weis did not vacate the award on this basis; nor did he propose to rule that the federal rule of discretion applies to only unliquidated claims.

14. It is also possible to construe *Eazor* as consistent with the general federal rule. After noting the liquidated/unliquidated damages approach, the panel observed that "this is an appropriate rule for discretionary application

as a matter of federal law . . . .." *Eazor,* 520 F.2d at 973. The reference to "*discretionary* application" suggests that the liquidated/unliquidated dichotomy provides a general standard that may be tempered by a consideration of the equities.

15. In view of my determination there is no need to address the Union's contention that plaintiffs' damage claim is unliquidated.

against a surcharge. These factors will be considered *seriatim*.[16]

### 1. Delay in Prosecuting the Action

█ █ The federal courts agree that prejudgment interest should be denied where the plaintiff has been dilatory in pursuing his action. *See, e. g., Lodges 743 and 1746, International Association of Machinists and Aerospace Workers v. United Aircraft Corp.*, 534 F.2d at 447; *Sanders v. John Nuveen & Co., Inc.*, 524 F.2d 1064, 1075 (7th Cir. 1975), *vacated on other grounds*, 425 U.S. 929, 96 S.Ct. 1659, 48 L.Ed.2d 172 (1976); *Norte & Co. v. Huffines*, 416 F.2d 1189, 1192 (2nd Cir. 1969) (*per curiam*), *cert. denied sub nom. Muscat v. Norte & Co.*, 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970). This extraordinarily protracted litigation involves collection delinquencies that extend back to the 1940's. But causes of action arising from the collection defaults did not accrue until 1961 and a suit on such claims was initiated in 1963. That action was dismissed for want of subject matter jurisdiction. The instant case was instituted on January 21, 1965, and, while the procedural history of this litigation is long, complex, and tortuous, the lapse of 15 years cannot be attributed to delaying tactics or want of diligence on behalf of either party. Accordingly, it would be unjust to deny prejudgment interest solely on the ground that almost 19 years have elapsed since plaintiffs' cause of action accrued. *See Speed v. Transamerica Corp.*, 235 F.2d 369, 374 (3rd Cir. 1956). *But see Gold v. Sloan*, 486 F.2d 340, 353 (4th Cir. 1973), *cert.*

*denied sub nom. Gold v. Scurlock*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974) (prejudgment interest deemed inequitable, in part, because of the "unavoidable length" of the proceedings).

### 2. Unjust Enrichment

█ Undoing unjust enrichment and making the injured party whole are the two basic purposes of a prejudgment interest award. The rationale underlying the unjust enrichment theory has been explained by one student-commentator as follows:

> To the extent defendant has had the free use of the income-producing ability of plaintiffs' money without having to pay for it, he has been unjustly enriched. To divest defendant of this unjustified benefit is not to penalize him, for it has been determined by the trial that it was never rightfully his.

*Recent Developments—Prejudgment Interest as Damages: New Application of an Old Theory*, 15 Stan.L.Rev. 107, 109 (1962). The student-commentator also opined that the focus of the unjust enrichment theory should be on the defendant's actual earnings. *Id.* at 112.

Support for this opinion is found in case law. For example, in *Ross v. Licht*, 263 F.Supp. 395, 411–12 (S.D.N.Y.1967), the court refused to award prejudgment interest in an action under Rule 10b–5 of the Securities Exchange Commission, in part, because, "while defendants have been wrongdoers, they did not profit from their wrongdoing as undoubtedly they had hoped

---

**16.** The parties have sought to discount the precedential effect of certain cases. For example, plaintiffs argue that decisions under section 16(b) of the Securities Exchange Act are inappropriate because the theory of damages in those cases is not to compensate the corporation, but to "'squeeze out any incentive to manipulate stock. . . .'" (Doc. # 244, at 14 n.3). The Union argues that admiralty cases, such as *The Wright*, 109 F.2d 699 (2nd Cir. 1940), lay down unique rules that have no applicability to nonadmiralty actions. The short but complete answer to the parties' contentions is that the decisional law does not recognize these fine distinctions. Thus, for ex-

ample, in *Lodges 743 and 1746, Internat'l Ass'n of Machinists and Aerospace Workers v. United Aircraft Corp.*, 534 F.2d at 446, Judge Moore cited both admiralty and section 16(b) actions in declaring that the general rule commits prejudgment interest to the trial court's discretion.

Plaintiffs have argued that there is a presumption to prejudgment interest. It would appear, however, that such presumption arises only when defendant has been unjustly enriched or there is a compensatory justification for the award. Once such factors have been established, it would appear that prejudgment interest should be awarded unless equitable considerations compel its disallowance.

to do but in fact appeared to have lost substantially all the purchase price paid by them to plaintiffs." Moreover, the presence of unjust enrichment has been cited as an important factor supporting prejudgment interest. *E. g., Mitchell v. Riegel Textile, Inc.*, 259 F.2d 954 (D.C. Cir. 1958); *Speed v. Transamerica Corp.*, 235 F.2d at 374. Other courts, however, have considered the implicit "use-value" of money sufficient justification for undoing unjust enrichment and granting prejudgment interest. *E. g., Illinois Central Railroad v. Texas Eastern Transmission Corp.*, 551 F.2d 943, 945 (5th Cir. 1977); *Pete v. UMW Welfare and Retirement Fund of 1950*, 517 F.2d 1275, 1288 (D.C. Cir. 1975).

Whether profit on detained funds must actually be made or whether the "use-value" of money alone sustains a prejudgment interest award, however, need not be decided here. Plaintiffs acknowledge that the Union never enjoyed use of fund royalties or otherwise retained monies owing to the Fund.

Plaintiffs do assert that the policy of permitting delinquent operators to remain in business benefited the Union financially and furthered intra-union politics because dues-paying union members continued to work. No attempt has been made to quantify the effect that the Union's collection defaults had on its own financial status. It is highly unlikely, however, that dues collected from union members working in the mines that remained open solely because royalty obligations were not strictly enforced approximated the nine million dollar plus figure which the plaintiffs are now claiming for prejudgment interest. Furthermore, any increase in dues payments was surely offset by the massive financial assistance rendered by the Union over the years since 1951. Thus, I do not believe that these generalized assertions of Union benefits rise to the level of unjust enrichment.

The fact that the Union did not benefit financially from its breach of trust is a factor that militates against a prejudgment interest award. In short, the unjust enrichment rationale cannot be used to justify the exaction of prejudgment interest.

### 3. *Compensation*

The absence of unjust enrichment does not compel disallowance of the surcharge. Although the Union did not receive the royalties which the Fund lost, recovery of prejudgment interest is predicated not only upon surrender of unjustified profits, but also on compensation of the victim. *Cf. Sanders v. John Nuveen & Co., Inc.*, 524 F.2d at 1075.

The "compensation" or "loss" theory of prejudgment interest is based on the "assumption that the inherent income-producing ability of money cannot be separated from the money itself; hence denial of interest would be denial of an inexorable economic fact." *Recent Developments— PreJudgment Interest as Damages: New Application of an Old Theory*, 15 Stan.L. Rev. 107, 109 (1962). Authorities are divided, however, on whether proof of loss of income-producing opportunities is necessary to justify a compensatory award of prejudgment interest. Some consider it irrelevant "to investigate what the plaintiff would actually have done with the money had it been promptly paid." *Developments in the Law—Damages*, 61 Harv.L.Rev. 113, 136 (1947). Others take the view that "emphasis on what the plaintiff would have earned is obviously proper" *Recent Developments—Prejudgment Interest as Damages: New Application of an Old Theory*, 15 Stan. L.Rev. 107, 112 (1962). Thus, for example, the Pennsylvania Supreme Court in *Kenin's Trust Estate (No. 1)*, 343 Pa. at 566, 23 A.2d 837, *sua sponte* reduced a six per cent prejudgment interest award to two-and-one-half per cent, taking judicial notice that during the pertinent time period the return on an investment would not have exceeded the lower rate.

The positions taken by the parties reflect this divergence of opinion. The Union, relying primarily on *Norte & Co. v. Huffines*, 416 F.2d 1189 (2nd Cir. 1969), *cert. denied*

*sub nom. Muscat v. Norte & Co.*, 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970), argues that there is no compensatory justification for an award because the Fund operated on a "pay-as-you-go" basis and uncollected royalties would not have been invested or otherwise produced income. Plaintiffs, on the other hand, assert that "[i]t offends both equity and common sense to argue that only injured parties so financially fortunate [as to have made investment use of the sums withheld] can receive redress in the form of prejudgment interest." (Doc. # 244 p. 21). Plaintiffs also contend that inflation provides sufficient compensatory justification for a prejudgment award.

If the debilitating effects of inflation are eliminated, then it is clear that a prejudgment interest award would place the Fund in a position better than that which it would have enjoyed had royalty obligations been strictly enforced. That is, since the Fund did not invest or otherwise earn income on royalty payments, the *status quo* would be restored by an award that enabled the Fund to supply the level of "real" benefits it could have provided at the time of the breach of trust. Thus, if prices had remained constant, the *status quo* would be restored by a recovery that matched the collection defaults. In this sense, then, the Fund would receive a windfall if a prejudgment interest award was predicated solely on the "inexorable economic" fact that money has income-producing ability.

The windfall potential of a prejudgment interest award was recognized by the *en banc* Court of Appeals for the Second Circuit in *Norte & Co. v. Huffines, supra*, a stockholders' derivative suit based on a fraudulent exchange of stock by defendant corporate fiduciaries. The trial court determined that the difference between the fair value of the corporation's stock and the real value of the shares given in exchange was approximately three million dollars and awarded that sum in principal damages plus 1.3 million dollars in prejudgment interest. The appellate panel summarily affirmed the

surcharge, but on petition for rehearing the Court of Appeals directed the district court to "give further consideration to whether the prejudgment interest . . . is compensatory and whether, in light of the substantial sum involved, it is in accord with 'fundamental fairness.'" 416 F.2d at 1191. Significantly, the court required consideration of whether the corporation had "passed up other, reasonably available and attractive opportunities to use these shares to raise cash or to purchase fully-valued assets." Had the Court of Appeals considered the implicit use-value of the three million dollars in damages sufficient compensatory justification, it would not have ordered a finding as to whether the corporation had been deprived of the principal sum. *See also McLean v. Alexander*, 449 F.Supp. 1251, 1277 (D.Del.1978), *rev'd on other grounds*, 599 F.2d 1190 (3rd Cir. 1979).

Pennsylvania law also appears to view examination of what would have been done with the money as appropriate. For example, in *Kipp's Estate*, 286 Pa. at 95–96, 132 A. at 823–24, an action charging the trustee with failure to distribute funds according to the terms of the will, the court stated:

It is true that such charge will be made against a fiduciary who fails to invest within a reasonable time, when he has opportunity to do so, if there is no necessity for retaining in his hands funds for the use of the cestui que trust . . ., but where some active duty is required, such as maintaining the one entitled to the income, as evidently made necessary in the present case, no such charge should be made, except as to balances which are kept on hand without reason.

I agree with the implicit holdings in *Norte & Co.* and *Kipp's Estate* that absent unjust enrichment or compensatory justification, the theoretical income-producing ability of money is not alone sufficient support for an award. Thus, if there were no compensatory justification other than what likely would have been earned with the money, my inquiry would be at an

end.[17] But I believe inflation is a prevailing economic fact that provides sufficient compensatory justification, at least under federal law, for a prejudgment interest award.[18] *See Fox v. Kane-Miller Corp.*, 398 F.Supp. 609, 651 (D.Md.1975), *aff'd*, 542 F.2d 915 (4th Cir. 1976). *Cf. Sauers v. Alaskan Barge and Transport, Inc.*, 600 F.2d 238, 248 (9th Cir. 1979).

The Fund would be made whole by an award that would translate into the real benefits which could have been provided with the uncollected royalties. Certainly, nine million 1980 dollars cannot buy what nine million 1960 dollars could. A prejudgment interest award would at least mitigate the ravaging effects of inflation.[19]

### 4. Equitable Considerations

The primary equitable consideration urged by the Union as militating against a prejudgment interest award is the massive financial assistance provided the Fund by the Union. Since 1951, the Union has periodically loaned the Fund sufficient sums of money to permit it to continue paying pensions to retired miners when, had it not been for such loans, the precarious financial status of the Fund would have forced a temporary suspension of pension payments. At the time of the trial, the Union had loaned the Fund in excess of nine million dollars, of which more than seven million dollars had been canceled and forgiven. $4,403,324 loaned to the Fund between 1951 and 1953 was forgiven in 1959. Another $2,885,000 loaned to the Fund between 1960 and 1961 was forgiven in 1970, five years after this action was instituted.

Plaintiffs argue that the Union's beneficence may only be considered by way of a set-off and, therefore, should not be addressed at this stage of the proceedings. There are, however, two compelling reasons for weighing the financial assistance as a factor bearing on the propriety of a prejudgment interest award.

First, the Union loans undercut the compensatory premise for an award. The damages sought here involve royalties that went uncollected twenty and thirty years ago. The loans were made during the same time period. Thus, as I observed at page 118 of the April 13th Memorandum and Order in a finding not disturbed on appeal,[20]

> The alleged loss in this case is the loss of income to the Fund because delinquent

---

**17.** Plaintiffs have argued that a pre-judgment interest award would be compensatory because the Fund's trustees could have sued or recovered interest on the unpaid royalties up until the time of judgment. Plaintiffs, however, are not entitled to be compensated for what hypothetically could have been recovered. Rather, they are entitled to compensation for what would have been received but for the breach of trust. In other words, had the Union strictly enforced the royalty obligations, the principal would have been timely paid. While prompt suit may have been necessary in some cases, any prejudgment interest award would have been theoretically recovered in a few years and would not have run the thirty year period involved here. In this regard, it should also be noted that the right to institute suit on royalty obligations would have eventually expired under the Pennsylvania statute of limitations.

**18.** As a general rule, Pennsylvania does not permit consideration of inflation in computing damages. *See Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3rd Cir. 1978). Whether this rule would be applied in assessing the equities of a prejudgment interest award is uncertain. However, since the state and federal causes of action are *in pari materia*, the question is really academic.

**19.** Another compensatory basis for a prejudgment interest award is to preserve the principal liability from invasion for counsel fees and costs. *Norte & Co.*, 416 F.2d at 1192.

**20.** The Court of Appeals, while reversing my holding that any recovery against the Union should be limited to the difference between the amount of the loans and the damages proven by the plaintiffs, did not disturb the factual findings that the loans mitigated the effects of collection delinquencies. Instead, the court held that I had failed to properly allocate the burden of proof on this issue and that there was insufficient evidence on the record to conclude that the separate transactions forgiving the indebtedness were intended to be in reparation for failure to collect royalties. 556 F.2d at 213–14.

operators failed to make their contributions. The loss resulted in the Fund's inability to maintain the established pension payments. The loans, in turn, were made for the specific purpose of enabling the Fund to continue making payments when, were it not for the loans, payments would have to have been discontinued. At least part of the explanation for the Fund's inability to make payments at the time of the loans was the reduced income caused by the delinquencies in operator contributions, for which the plaintiff seeks to hold the defendants liable in this suit.[53]

[53] The other explanation for the Fund's reduced income was the decline in anthracite production. *See* text and footnote at footnote 1, *supra*.

Because the loans enabled the Fund to continue making payments, they lessened the loss sustained by the Fund allegedly as a result of defendants' activities.

While the decline in anthracite production contributed in a much larger degree to the Fund's financial difficulties, the fact remains that the party sought to be charged with liability for prejudgment interest in this action is the same party that provided financial assistance to the Fund and such financial assistance offset, in part, the combined effects of the decline in production and the collection delinquencies.

"Justice and fair dealing" also compels consideration of the Union's financial assistance. Although the Union may not be able to qualify the loans as a set-off against its principal liability,[21] *Bogert, supra*, §§ 708, 814, it would be inequitable to ignore the

fact that but for the Union's actions pension fund payments would have been temporarily suspended. Whether the financial assistance is eventually regarded as gifts or payments made to offset losses caused by declining production, the fact remains that the Fund, on whose behalf more than 9 million 1980 dollars in prejudgment interest is sought, had the free use of more than 7 million 1950 and 1960 dollars. This is a strong factor militating against an award.

█ The parties have not cited and my independent research has not disclosed any reported decision addressing the weight, if any, to be given to financial assistance provided by the defendant against whom a claim for prejudgment interest has been made. Nonetheless, I am satisfied that under the circumstances of this case justice requires the disallowance of interest. Accordingly, plaintiffs' request for prejudgment interest will be denied.[22]

### III. THE STATUTE OF LIMITATIONS

█ The Union's limitations defense proceeds from the unsound premise that this action is now proceeding solely under section 302. As noted in Parts I and IIA *supra*, the Court of Appeals found the federal and state causes of action to be, in essence, identical. The Union has been considered a *de facto* trustee and plaintiffs have established a breach of trust under state and federal law manifesting itself as a breach of loyalty and negligence in the administration of the Fund. Thus, the prior ruling that plaintiffs' causes of action did not accrue until they had reason to suspect

**21.** I believe that under the circumstances of this case the question of set-off should only be considered in connection with principal liability, rather than in connection with a total damages award that includes prejudgment interest. The effects of inflation on collection delinquencies that occurred twenty and thirty years ago is the basic premise for a prejudgment interest award. It would seem somewhat anomalous to recognize inflation as the compensatory justification for a prejudgment interest award and then give a set-off in 1980 dollars for loans made in 1950 and 1960 dollars against a total damage award that included prejudgment interest.

**22.** The Union, citing *Norte & Co. v. Huffines*, 416 F.2d at 1191, argues that the sheer size of the prejudgment interest claim militates against the award and that a levy of that magnitude would jeopardize the Union's viability as an effective bargaining agent. The Union, however, has not carried its burden of showing that the surcharge will jeopardize its solvency or viability. Accordingly, I do not find that the size of the claim defeats the award. *See Pete v. UMW Welfare and Retirement Fund of 1950*, 517 F.2d at 1288–89.

wrongdoing need not be reconsidered and the Union's attempt to raise the bar of limitations is without merit.

Assuming, *arguendo*, however, that this action is proceeding independently under section 302, the limitations defense is still ineffectual. The Court of Appeals recognized an implied cause of action for breach of fiduciary duties under section 302. The "structural violation" under section 302 did not alone constitute the breach of fiduciary duties or otherwise provide a basis for civil liability. Only when the Union undertook a course of conduct that prima facie benefited working members to the detriment of pensioners did the Union breach its trust and only when this breach was reasonably discoverable did the plaintiffs' cause of action under section 302 accrue. This occurred, as I found at page 64 of the April 13th Memorandum, on December 14, 1961, when plaintiffs were first given cause to suspect that the trustees had been negligent with respect to royalty collection efforts. Accordingly, this action, instituted less than six years later, was not untimely and recovery on collection delinquencies that occurred more than six years before the commencement of the lawsuit is not time-barred.