**LUDLOW INDUSTRIES, INC., Plaintiff,**

v.

**PENSION BENEFIT GUARANTY CORPORATION, Defendant.**

**No. 79 C 1603.**

United States District Court,
N. D. Illinois, E. D.

July 27, 1981.

Quinn, Jacobs & Barry, James J. Flynn, Corinne Chandler, Chicago, Ill., for plaintiff.

Kenneth A. Henry, U. S. Dept. of Labor, Chicago, Ill., Frank H. McCulloch, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

The plaintiff in this case is Ludlow Industries, Inc. On January 30, 1976, Ludlow terminated two pension plans that it and its corporate predecessor had maintained for the benefit of Ludlow's employees. For the purposes of this motion, the two plans can be considered identical. Both plans were "qualified" by the Internal Revenue Service under the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1976), and both were covered by the termination insurance provisions of that statute, 29 U.S.C. § 1301 *et seq.* The termination insurance provisions of ERISA essentially assure that fully vested beneficiaries of certain sorts of pension plans will receive the full value of their nonforfeitable benefits up to a statutory maximum. These protections are administered by the defendant in this case, the Pension Benefit Guaranty Corporation (PBGC). By and large, PBGC's insurance scheme is financed by premiums collected from the covered plans and, in certain circumstances, from the employers. When, however, a plan is terminated and the discounted value of the vested nonforfeitable

benefits exceeds the plan's assets, the terminating employer will be obligated, under the provisions of 29 U.S.C. § 1362, to make up the difference up to a maximum of 30% of its net assets.

At the time Ludlow terminated its two plans, this latter set of conditions obtained. As a result, on February 2, 1979, PBGC sent Ludlow a written request for payment of this amount. On April 20, 1979, Ludlow commenced this action by filing a two-count complaint, essentially requesting a declaratory judgment establishing that it was not liable to PBGC for the shortfall in the plan's assets. PBGC answered on August 1, counterclaiming under § 1362 for the amount of the shortfall, some $423,289. Though the complaint, answer, and counterclaim raise a host of questions, the parties have honed the matter down to two issues: First, whether the provision of ERISA that purports to require that Ludlow make up the difference between plan assets and vested benefits is constitutional, and, second, whether PBGC is entitled to receive interest on this principal amount.

Plaintiff's constitutional argument turns on the fact that the terminated plans were initiated in 1961, well before the passage of ERISA, and on the fact that the plans contained a clause barring the beneficiaries from any recourse against the employer in the event that the plan's assets should prove insufficient to fund its obligations. Taking these facts together, Ludlow contends that ERISA's attempt to retroactively compel it to cover the plan shortfall amounts to an unconstitutional deprivation of property without due process of law. As defendant points out, however, this line of argument has been foreclosed in this Circuit by the Court of Appeals' recent decision in *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 592 F.2d 947 (7th Cir. 1979).

In *Nachman*, as in this case, the court was considering an employer's contention that the constitution forbids the retroactive application of § 1362 to create liability for a pension plan shortfall where the plan contained a clause limiting the beneficiaries to recourse against the plan assets. The Court

of Appeals began its analysis with the observation that, "Only if Congress legislates to achieve its purpose in an 'arbitrary and irrational way' is due process violated." *Nachman*, 592 F.2d at 958 (citations omitted). The court then went on to list the factors relevant to a determination of the rationality of the ERISA scheme:

> "Rationality must be determined by a comparison of the problem to be remedied with the nature and scope of the burden imposed to remedy that problem. In evaluating the nature and scope of the burden, it is appropriate to consider the reliance interests of the parties affected . . .; whether the impairment of the private interest is effected in an area previously subjected to regulatory control . . .; the equities of imposing the legislative burdens . . .; and the inclusion of statutory provisions designed to limit and moderate the impact of the burdens." 592 F.2d at 960 (citations omitted).

In applying these considerations to § 1362, the court emphasized congressional findings that the loss by employees of their anticipated vested benefits constituted a serious and widespread problem. *Id.* at 960–961, 962–963. While the court recognized that the liability imposed on employers under the Act was substantial, it also held that the employer's reliance on the plan language foreclosing such liability was, in the view of Congress, outweighed by the employees' reliance on the promise of benefits. *Id.*, at 961–962. Additionally, the court noted that the employer's right to rely on the inviolability of the plan language was somewhat mitigated by the fact that pension plan terminations had previously been the subject of federal regulation. *Id.*, at 962. Moreover, the court emphasized that the equities favored imposing the cost of a shortfall on the employer since a "pension payment is a reward for length of service" and, in the case of a vested employee, the employer has "received the benefit he bargained for." *Id.* Finally, the court was at particular pains to emphasize the provisions of § 1362 were carefully drawn to moderate the impact of the liability imposed in a number of ways. *Id.*, at 962–963.

■ It is difficult to see how the holding in *Nachman* can be distinguished from the facts of this case. Indeed, close reading of plaintiff's brief indicates that plaintiff does not really try to do so. Essentially, plaintiff's brief points out that *Nachman* primarily rests on the Seventh Circuit's interpretation of two Supreme Court cases. The brief then goes on to argue that this interpretation is incorrect. While plaintiff's arguments along these lines are thoughtful and well stated, they do not alter the fact that *Nachman* is the controlling law in this Circuit. Accordingly, this court is obligated to follow it. For this reason, it is necessary to conclude that this application of § 1362 does not amount to a deprivation of property without due process of law.

■ This leaves the question of interest. PBGC's argument turns principally on the provisions of 29 U.S.C. § 1368. Subsection (a) of § 1368 provides that PBGC automatically becomes the holder of a lien against all property and property rights of any employer liable to it under § 1362 when such an employer has neglected or refused to satisfy a demand for payment. Subsection (b) of section 1368 specifies the term of this lien, establishing that "the lien . . . arises on the date of termination of a plan, and continues until the liability imposed under section 1362 . . . is satisfied." Subsection (a) provides that the lien will be for "the amount of such liability (including interest)." In short, on its face, the language of § 1368 seems plainly to contemplate that an award arising from a finding of liability under § 1362 will include not only an award of the principal amount of the shortfall at the time of a plan's termination, but also an award of the interest on that amount up until the date on which the liability is satisfied.

■ Ludlow argues that no formal demand for payment has ever been filed in this case, and, therefore, that the lien enforcement procedure contemplated by § 1368 has never been properly initiated. This argument misses the point. Regardless of whether this is an action on the lien created by § 1368 or simply an action brought to enforce the liability arising under § 1362, the fact remains that the language of § 1368 clearly establishes that Congress viewed the proper measure of an employer's § 1362 liability as including post-termination interest. That is, since the lien created by § 1368 is meant to secure the entire amount of the employer's liability, and since the amount of that lien includes both the principal amount of the shortfall and interest on that sum, the fairest inference from the scheme of § 1368 is that Congress intended PBGC to recover interest from those liable under § 1362.

■ Moreover, as PBGC points out, this is the only result that makes sense in the context of the policies implemented by the Act. Section 1362 obligates the employer to make up a pension plan shortfall as determined by the difference between the discounted value of the vested nonforfeitable benefits outstanding and the total of the plan's assets. So long as the plan assets are earning interest something approaching the market rate, this figure remains constant. If, however, the plan assets do not earn interest, then the figure grows; for, as with any other discounted stream of future expenses, the present value of each item in the stream of future plan obligations grows as time passes. Accordingly, an award of § 1362 liability that does not include an award of post-plan interest does not cover the entire plan shortfall and, thus, does not grant the full relief contemplated by § 1362.[1]

For all of the above reasons, the court concludes that the motion of plaintiff/coun-

---

1. Though the logic of this argument would entitle PBGC to interest at market rates dating from the time at which the plan terminated, and though the complaint in this case seeks such relief, PBGC has represented in its briefs that it seeks only interest accrued on the principal sum of $423,289 since August 1, 1979, and that it seeks compensation at an interest rate of 6% per year from August 1, 1979, to February 1, 1980, and 12% per year thereafter. The court, therefore, restricts the award of interest entered below to the interest accrued during this period at these rates.

ter-defendant Ludlow Industries for summary judgment must be denied. The motion of defendant/counter-plaintiff Pension Benefit Guaranty Corporation for summary judgment must be granted. Judgment is hereby entered in favor of Pension Benefit Guaranty Corporation on its counterclaim in the amount of $423,289 plus interest as follows: at a rate of 6% per year from August 1, 1979, to February 1, 1980, and at a rate of 12% per year thereafter. The complaint filed by Ludlow Industries is hereby dismissed.