5) the plaintiffs' motion to stay and motion to strike be and are **MOOT**.

**IT IS FURTHER ORDERED** that this action be and is dismissed with prejudice, each party to bear its own costs and attorneys' fees.

---

## PENSION BENEFIT GUARANTY CORPORATION

v.

## FURLONG MANUFACTURING COMPANY, Blizlee Products, Inc. and The L. Mendelson Co., Inc.

### Civ. A. No. 82–2851.

United States District Court, E.D. Pennsylvania.

June 29, 1984.

David Power, Washington, D.C., for plaintiff.

Burton Spear, Doylestown, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this action brought under Title IV of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1301, *et seq.*, as amended P.L. 96–364, 94 Stat. 1208 (1980), the plaintiff, the Pension Benefit Guaranty Corporation (PBGC) has moved for summary judgment against the defendants, Furlong Manufacturing Company, Blizlee Products, Inc., and the L. Mendelson Company, Inc. (Furlong). The PBGC seeks in this action to collect the statutory liability which it contends is imposed on the defendants by 29 U.S.C. § 1362. Such an action is authorized by 29 U.S.C. § 1368(d)(1) as a result of the termination of Furlong's Pension Plan (the Plan). The amount of this liability is the difference between the total costs to the PBGC of providing to Plan participants their guaranteed pension bene-

fits, $81,761, and the amount held in trust by the Plan for distribution, $36,768.37. The amount of this difference is $44,993.

■ The PBGC also seeks interest in the amount of $22,764.58. Title IV of ERISA provides for the assessment of interest on 29 U.S.C. § 1362 liability. Title 29 U.S.C. § 1368(a) provides that "if any employer ... liable to the [Pension Benefit Guaranty Corporation] corporation under 29 U.S.C. § 1362 neglect or refuse to pay, after demand, the amount of such liability (including interest), there shall be a lien in favor of the corporation upon all property and right to property ... belonging to such employer ..." The right to interest also is implicit in the statutory scheme which values assets and benefits as of the date of plan termination. Unless the difference is paid to the PBGC on that date, the imposition of interest is necessary to make Title IV's insurance system whole. *Ludlow Industries v. Pension Benefit Guaranty Corporation*, 524 F.Supp. 155 (N.D.Ill. 1981). *See Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 644 (W.D.Wisc. 1979); *Nedd v. United Mine Workers of America*, 488 F.Supp. 1208 (M.D.Pa.1980).

Interest on 29 U.S.C. § 1362 liability is charged at the interest rate established pursuant to Section 6621 of the Internal Revenue Code. 29 C.F.R. 2622.7(c). This rate has been chosen, not just to make the insurance system whole, but also to discourage employers from using the insurance system as a source of financing. *See* 45 Fed.Reg. 34904. Interest on 29 U.S.C. § 1362 liability normally accrues from the date of plan termination. However, in the preamble to its proposed regulation on Employer Liability for Single Employer Plan Termination, which was published in 45 Fed.Reg. 34901 (May 23, 1980), the PBGC noted that because of uncertainty with respect to the rules for the calculation of employer liability, it has foregone collection of interest from the date of plan termination in certain cases. In those cases, the PBGC collected interest from the time PBGC gave the employer specific advice concerning the amount of its 29 U.S.C.

§ 1362 liability. 45 Fed.Reg. 34901, 34904. By notices published in the Federal Register on January 28, 1981 and February 24, 1981, the PBGC clarified this policy and advised employers that maintained single employer plans which terminated before April 1, 1981, that the PBGC normally would waive interest on 29 U.S.C. § 1362 liability from the date of termination until April 1, 1981. Thereafter, the PBGC would collect interest at the IRS rate. 45 Fed. Reg. 9545; 46 Fed.Reg. 13690. Since the Furlong plan was terminated in 1975, and payment under 29 U.S.C. § 1362 was not demanded of the defendants until after April 1, 1981, only interest from April 2, 1981, is sought by the PBGC.

■ A trial court may enter summary judgment if, viewing the evidentiary material of record in the light most favorable to the party opposing the motion, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Hollinger v. Wagner Mining & Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). If a summary judgment motion is made and properly supported under Fed.R.C.P. 56, the adverse party may not rest upon the allegations of his pleadings. He must, by affidavit or by reference to interrogatories, admissions, depositions, and other evidentiary material of record, show that there is a genuine material issue for trial. Fed.R.C.P. 56(e). *Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 96 (3d Cir.1982). For the reasons which follow, the plaintiff's motion for summary judgment will be granted and judgment entered in favor of the plaintiff and against the defendant in the amount of $67,757.58.

Based on the pleadings, admissions, and affidavits, the following facts are uncontested. The PBGC is a wholly-owned United States Government corporation created by 29 U.S.C. § 1302 to administer the mandatory, self-financing pension plan termination insurance program established by Title IV of ERISA. The PBGC's principal purpose is to insure the payment of pension benefits to participants in pension plans

that terminate when covered by Title IV of ERISA. 29 U.S.C. § 1302(a)(2). The Title IV insurance program is financed through premiums paid by pension plans that are covered by Title IV, by payments received from employers pursuant to liability imposed by 29 U.S.C. § 1362, and by the assets owned by plans at their termination. 29 U.S.C. §§ 1306, 1342, 1362–1364.

Defendant Furlong is a Pennsylvania corporation; defendants Blizlee and Mendelson are New York corporations. All of the defendants are headquartered in Furlong, Pennsylvania. Leon Mendelson owns all of the stock of Furlong, Blizlee, and Mendelson. As of July 1, 1975, the combined net worth of the defendants exceeded $150,000.

The Plan was established by Furlong in 1972 to provide pension benefits for its employees. By letter dated June 17, 1975, Furlong notified the PBGC of its intent to terminate the Plan effective July 1, 1975, citing unfavorable business conditions as the basis for the proposed termination. On May 29, 1979, the PBGC and Furlong entered into an agreement, pursuant to 29 U.S.C. §§ 1342 and 1348, appointing the PBGC statutory trustee of the Plan and establishing July 1, 1975, as the date of plan termination.

Title 29 U.S.C. § 1362(a) imposes liability on "any employer who maintained a [covered] plan ... at the time it was terminated ...." The amount of the liability is equal to the lesser of:

(a) the current value of the plan's benefits guaranteed under this subchapter on the date of termination over

(b) the current value of the plan's assets allocable to such benefits on the date of termination, or

(2) thirty (30%) percent of the net worth of the employer determined as of a day chosen by the corporation but not more than 120 days prior to the date of termination, computed without regard to any liability under this section. [29 U.S.C. § 1362(b).]

In addition, Title 29 U.S.C. § 1301(b) provides, in pertinent part:

For purposes of this title, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer. The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of the Internal Revenue Code of 1954.

Furlong has admitted in the agreement of May 29, 1979, that the Plan was covered by Title IV of ERISA at the time of its termination. In addition, Furlong has admitted that it was the employer who maintained the Plan at all relevant times, that all of the stock of Furlong, Blizlee, and Mendelson was owned by Leon Mendelson, and that thirty (30%) percent of the combined statutory net worth of Furlong, Blizlee, and Mendelson is in excess of $45,000. Furlong contends, however, that there remain substantial questions of fact and issues of law which require denial of the PBGC's motion for summary judgment. For the reasons which follow, this court has determined that there are no genuine issues of material fact and that summary judgment must be granted.

Defendant Furlong contends that the PBGC failed to comply with the termination procedure set out in 29 U.S.C. § 1341(a) through (f). Section 1341 sets out the procedure for voluntary termination of a plan by the plan administrator. Parts (a) and (b) state that for a period of 90 days following the proposed termination date the plan administrator shall pay no amount pursuant to the termination procedure of the plan unless, before the expiration of the 90-day period, he receives notice that the assets held under the plan are sufficient to discharge when due all obligations of the plan with respect to basic benefits. Part (c) then provides that if, within this 90-day period, the PBGC is unable to determine that the assets held under the

plan are sufficient, it shall notify the plan administrator of that finding within such 90-day period. Part (d) provides for extension of this 90-day period either by written agreement between the PBGC and the plan administrator signed before the expiration of the 90 days, or else by order of the appropriate court upon application of the PBGC. An extension may then, in turn, be extended by the same procedures before the expiration of the previous period of extension.

█ Furlong contends that the PBGC's failure to either notify it of insufficiency of assets or to obtain an extension of the investigation period prior to the expiration of that period precludes the PBGC from asserting jurisdiction under § 1341 and likewise precludes it from recovery. For several reasons this contention is incorrect.

█ First, Furlong offers no support for the contention that the PBGC's failure to notify Furlong of either a finding of insufficiency or their inability to make such a finding relieved Furlong of its obligation to make payment. Under 29 U.S.C. § 1362(a) liability arises at the termination date, and nothing within the statute makes such liability dependent on notification. A United States District Court in Illinois recently held that the fact that no formal demand for payment was ever filed did not preclude the lien enforcement procedure contemplated by 29 U.S.C. § 1368. *Ludlow Industries v. Pension Benefit Guaranty Corp.*, 524 F.Supp. 155, 158 (N.D.Ill.1981). *See also, PBGC v. Ouimet Corp.*, 711 F.2d 1085, 1094–5 (1st Cir.1983). The Third Circuit recently held an employer liable to the PBGC, although there was a delay in notification of three years. *In Re: Syntex Fabrics, Inc. Pension Plan*, 698 F.2d 199 (3d Cir.1983). It is termination of the plan which triggers liability, rather than notice by the PBGC of their finding regarding solvency of the plan.

█ In addition, to accept Furlong's proposed construction of the statute would be to frustrate the statutory goals of Title IV. These goals are:

(1) to encourage the continuation and maintenance of voluntary private pension plans for the benefit of their participants;

(2) to provide for the timely and uninterrupted payment of pension benefits to participants and beneficiaries under plans to which this subchapter applies, and;

(3) to maintain premiums established by the corporation under section 1306 of this title at the lowest level consistent with carrying out its obligations under this subchapter.

29 U.S.C. § 1302(d). *See In re: Syntex*, 698 F.2d at 200; *PBGC v. Heppenstall Co.*, 633 F.2d 293, 296 (3d Cir.1980). The United States District Court for the District of Massachusetts recently held that:

> ... the purpose of the 90-day provision is to protect the PBGC and plan participants against distribution of plan assets without an opportunity for prior review by the PBGC. Section 1341(c) [was] ... created by Congress to guaranty that employees holdings vested rights under qualified private pension plans will receive their expected benefits .... If the PBGC does provide notice within 90 days, the only effect is apparently that the plan administrator may distribute assets to plan participants. *See* 29 U.S.C. § 1341(a).

*In re: Milham Products Co., Inc. Pension Plan*, No. 80–780–K, slip op. at 4 (July 8, 1983). From the record, it appears that Furlong chose not to follow this course. Finally, it is important to note that, in general, Title IV is designed to protect the pension fund and participants, and the PBGC, with the employer's interests being subordinated.

Furlong's contention that it was prejudiced by the PBGC's actions likewise is without support. The second affidavit of Deborah R. Alexander, the PBGC case officer responsible for processing the termination of the Furlong plan, states that from June, 1975, when the PBGC received Furlong's notice of intent to terminate its plan, until June 22, 1977, when the PBGC in fact

notified the plan administrator of the PBGC's inability to determine the sufficiency of the assets held under the Plan, the PBGC was continuously engaged in attempting to resolve that question. Ms. Alexander's affidavit further states that numerous telephone and written communications between the PBGC and R. Theodore Benna, the Plan's actuary, took place from June, 1975 to March, 1979. In addition, there were numerous telephone conversations between PBGC employees and the plan administrator, the attorney for the plan sponsor, and an accountant at Furlong. The defendants have not contradicted these averments. It is clear from the number of communications between the parties, which continued up to the time of actual notification of Furlong by the PBGC that the PBGC was as yet unable to determine the sufficiency of assets, and that additional time was necessary to make the determination. There is no evidentiary material of record which shows that Furlong, aware that the PBGC was continuing to make its determination, objected in any way to the extended period of time taken to complete the assessment, or was in any way prejudiced by the delay.

■ Defendant Furlong also contends that the PBGC has miscalculated the amount of Furlong's liability to the PBGC. Furlong bases its assertion in its answer to the PBGC's motion for summary judgment that five employees covered by the Plan are now deceased. Furlong does not state how this fact affects its liability to the PBGC under § 1362. Moreover, Furlong makes this assertion in its answer rather than in an affidavit as required by Fed.R. Civ.P. 56(e). However, even had the assertion been made in an affidavit as required, it would not serve to reduce the amount of Furlong's or the PBGC's liability. ERISA requires the PBGC to guaranty payment of all nonforfeitable benefits. 29 U.S.C. § 1322(a). Sections 1.4, 4.4, and 5.2 of the Furlong plan expressly provide for payment by the Plan of benefits to a participant's beneficiary or estate upon his or her death. Thus, Furlong and the PBGC are liable to the full extent calculated in the affidavits of the PBGC employees responsible for such calculations. Furlong has failed to introduce any affidavits regarding the amount due. For these reasons, the amount due the PBGC from Furlong is that calculated by the PBGC, this amount being $44,993 plus interest in the amount of $22,764.58 as authorized by 29 U.S.C. § 1368(a) and 26 U.S.C. § 6622, and as computed under 26 U.S.C. § 6621.

For the above stated reasons, plaintiff PBGC's motion for summary judgment against defendants Furlong Manufacturing Corp., et al., will be granted and judgment will be entered in favor of the plaintiff and against the defendants in the amount of $67,757.58.